TINA MARIE BOHAN,

    Plaintiff,

v.                                                Case No: 6:16-cv-1611-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## ORDER[1]

Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for disability insurance benefits under the Act. Upon a review of the record and after due consideration, the Commissioner's final decision is **AFFIRMED**.

### Background[2]

Plaintiff filed for benefits on September 21, 2012, alleging an onset date of May 31, 2008 (Tr. 180-185). She claimed that she was disabled due to back and neck problems, arthritis, anxiety, and diabetes (Tr. 22, 231-32).

Plaintiff's application was denied initially and on reconsideration, and she requested and received a hearing before an administrative law judge ("ALJ") (Tr. 82, 97-101, 107-112, 114, 38-71). In a decision dated March 5, 2015, the ALJ found Plaintiff not

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge and the matter has been referred in accordance with 28 U.S.C. §636(c) and FED. R. CIV. P. 73.

[2] The information in this section is taken from the parties' joint memorandum (Doc. 21).

disabled through the date she was last insured (March 31, 2013) (Tr. 19-37). The Appeals Council denied Plaintiff's request for review on July 19, 2016 (Tr.1-7). Accordingly, the ALJ's March 5, 2015 decision is the final decision of the Commissioner. Having exhausted the available administrative remedies, Plaintiff filed this action for judicial review (Doc. 1). The matter is fully briefed and ripe for resolution.

### The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The plaintiff bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, the ALJ performed the required five-step sequential analysis. At step one, the ALJ found that, although Plaintiff was currently working as a cashier at Disney World and had worked every year since her alleged onset date, she had not engaged in substantial gainful activity from her alleged onset date through her date last insured (Tr. 24). At step two, the ALJ determined that Plaintiff had the severe impairments of: degenerative disc disease; obesity; diabetes mellitus; and hypertension (20 CFR 404.1520(c)), but found, at step three, that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 25-27). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) with only occasionally stooping, crouching, and crawling; no climbing ladders, ropes and scaffolds. The claimant must avoid concentrated exposure to vibrations and hazards. Lastly, the claimant is limited to work that allows her to perform her job duties while in either a seated or standing position.

(Tr. 28).

At step four, relying on the testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff was able to return to her past relevant work of a Cashier II (light, unskilled work) (Tr. 31-32). Therefore, the ALJ found Plaintiff not disabled from May 31, 2008 through March 31, 2013 (Tr. 32).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against

the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

### 1. Evaluation of Medical Opinions

Plaintiff urges reversal of the administrative decision, contending that the ALJ failed to weigh the opinions of treating physicians Michael Desouza, M.D. and Stephane Lavoie, M.D., and overlooked the results of a 2013 MRI report.

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel, 631 F.3d at 1178-79 (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician *unless there is good cause to do otherwise*. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440.

By contrast, a consultative examiner's opinion is not entitled to the deference normally given a treating source. See 20 C.F.R. § 404.1527(c) (2); Crawford, 363 F.3d at 1161. Nonetheless, all opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. See 20 C.F.R. §§ 404.1527, 416.927, and Winschel.

*Dr. Desouza*

Plaintiff was first seen by Dr. Michael Desouza on October 9, 2009 (Tr. 453) and she continued to see him on follow up visits through her date last insured. Plaintiff argues that the records from Dr. Desouza "provide a historical perspective of the complaints and symptoms" and show that she "experienced chronic back pain, numbness, neuralgia, neck pain, swelling in the right lower extremity, and panic attacks" and was offered medication as treatment (Doc. 21 at 20). Plaintiff contends that these treatment records support her testimony that she experiences back and neck pain on a consistent basis to a varying degree, yet "the ALJ does not indicate the weight assigned to the opinions of Dr. Desouza, and it is impossible to know how the records of this treating physician were factored into the ALJ's residual functional capacity determination" (Tr. 20).

Plaintiff does not identify any formal opinion issued by Dr. Desouza, nor does she point to any particular "opinion" she claims was not appropriately considered. To the extent the doctor's treatment notes are opinions and Plaintiff is asserting that the ALJ did not consider or credit the treatment notes, this contention is belied by the administrative decision. Dr. Desouza's treatment notes are contained in Exhibits 5F (Tr. 381-454), 8F (475-491) and portions of 10F (Tr. 506-524). The ALJ cited specifically to these treatment notes as support for the finding that Plaintiff could perform light exertional work. The ALJ found:

- "In contrast to the claimant's testimony, multiple treatment entries document the claimant's mood and affect as normal (e.g. Exhibit 5F, pages 6, 9, 18, 22, 29, and 33)" (Tr. 25);

- "Certain treatment entries note that the claimant denied memory loss, anxiety or depression (Exhibit 8F, pages 2 and 6)." (Tr. 25);

- "2013 treatment entries document the claimant denying excessive daytime sleepiness (Exhibit 8F, pages 2 and l0). The undersigned accords more weight to these entries and concludes that the claimant's impairments do not interfere with her ability to sleep." (Tr. 29);

- "[T]reatment entries support the conclusion that the claimant could perform light exertional work. For example, multiple entries documented the claimant's strength as "5/5" in her extremities (e.g. Exhibit 5F, pages 3, 29, 33, 37 and 41). These entries also noted no motor or sensory deficits. Other entries also note the claimant denies muscle weakness, joint pain or back pain (e.g. Exhibit 8F, page 2; 10F, page 13). Overall, this supports the

> conclusion that the claimant is capable of lifting and carrying in accordance with the undersigned's assessment." (Tr. 30);
>
> - "Treatment entries also documented the claimant's gait as normal (Exhibits 5F, page 3; 9F, page 5; and 10F, page 26)." (Tr. 31).

These findings are supported by the substantial and particular evidence the ALJ cites. Thus, Plaintiff's contention that Dr. Desouza's treatment notes were not adequately weighed or considered is without merit.

*Dr. Lavoie*

Plaintiff was first seen by Dr. Stephane Lavoie M.D., at Florida Orthopedic Associates on October 27, 2008 (Tr. 331). X-rays were performed and Dr. Lavoie diagnosed Plaintiff with cervicalgia, lumbalgia, thoracalgia and degenerative disc disease at L4-5, L5, S1, and C6-7 (Tr. 330). An MRI was ordered. Id. On December 29, 2008, Plaintiff returned to Dr. Lavoie, who reviewed the MRI and suggested cervical and lumbar epidural injections, which Plaintiff declined (Tr. 328).

On January 25, 2013, Plaintiff was again seen by Dr. Lavoie (Tr. 495). Physical examination showed positive tenderness in Plaintiff's cervical, pericervical, periscapular and trapezius regions and mild muscle spasm (Tr. 496-7). X-rays taken that day revealed cervical spine narrowing of C5-C6-C7 disc space with posterior osteophytes impinging on the foramen with other level mild spondylosis and straightening of the lumbar lordosis; lumbar spine-mild straightening of the normal lumbar lordosis. (Id.). Plaintiff was diagnosed with cervical spondylosis, lumbago, cervicalgia, cervical spinal stenosis, lumbosacral spondylosis and sprain of the lumbar regions (Tr. 498).

Plaintiff returned to Dr. Lavoie on February 4, 2013, for a follow-up after her MRIs (Tr. 493). On examination, Plaintiff appeared to be in mild distress and had discomfort

with range of motion testing in her cervical spine (Id.). Dr. Lavoie reviewed the lumbar MRI and said: "The disc was significantly degenerative at L4-5 causing some bulging and stenosis." (Id.). After the doctor reviewed the cervical MRI, he stated that it confirmed degenerative changes at the C5-6 and C6-6 levels with associated foraminal stenosis, mainly on the left (Id.). Physical therapy was recommended (Tr. 494).

Plaintiff returned to Dr. Lavoie on April 26, 2013, after her date last insured, for a follow-up concerning her neck and back pain (Tr. 526). She complained that there was no improvement with physical therapy (Id.). Upon physical examination, Plaintiff had a decreased range of motion of her neck, tender paraspinal and trapezius muscle areas with a positive Spurling sign to the right (Id.). The doctor's impression was cervical spondylosis, cervical spinal stenosis, lumbosacral spondylosis, spinal stenosis-lumbar, lumbago, cervicalgia, sprain lumbar region (Id.).

Plaintiff argues that these records "reveal continued symptoms of back pain, neck pain, and numbness in the right upper extremity" and "the ALJ does not indicate the weight assigned to the opinions of Dr. Lavoie," making it "impossible to know how the records of this treating physician were factored into the ALJ's residual functional capacity determination." (Doc. 21 at 23). Again, I am unpersuaded.

As with Dr. Desouza, Plaintiff does not identify any formal opinion issued by Dr. Lavoie, nor does she point to any particular treatment note that she claims was not appropriately considered. Dr. Lavoie's notes are found in Exhibits 2F, 9F, portions of 10F, and 11F. To the extent the treatment notes are opinions, a review of the administrative decision shows that the ALJ cited specifically to these treatment notes as support for the

finding that Plaintiff could perform a reduced range of light exertional work.[3] These conclusions are supported by the substantial records cited. No error is shown.

*2013 MRI report*

Plaintiff contends that the ALJ erred in failing to mention the findings of the MRI testing performed in January 2013. However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" provided the ALJ's decision is sufficient to enable the Court to conclude that the ALJ properly considered the claimant's condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotation omitted). I find that to be the case here. While the 2013 MRI reports were not explicitly addressed, the ALJ discussed the diagnoses and physical examination findings included in the treatment notes written after the MRIs were received:

- "February 2013 diagnoses from Dr. Lavoie include cervical spondylosis and stenosis, lumbago, cervicalgia, and a sprain, which are all relatively milder diagnoses (Exhibit 9 F, page 1)." (Tr. 28).[4]

- "An April 2013 entry did note a positive Spurling test, and tenderness (Exhibit I0F, page 21). However, the entry also noted a negative straight leg raising result, normal sensation, full strength in the deltoids, biceps, triceps and wrist, and only "mild" tenderness in the lower back and buttocks. Overall, this is consistent with the conclusion that the claimant is limited to light work, but could still perform postural motions on an occasional basis." (Tr. 31).

- "A May 2013 exam of the claimant revealed an essentially normal range of

---

[3] See, e.g., Tr. 28 (noting the recommendation for injection therapy, which Plaintiff declined, and detailing Dr. Lavoie's February 2013 diagnoses, observing that they "are all relatively milder diagnoses."); Tr. 30 (citing to the 2008 MRIs and the 2013 x-rays); and Tr. 31 (2013 treatment note showed negative straight leg raising results, and another note documented Plaintiff's normal gait).

[4] The exhibit referenced by the ALJ (Exhibit 9F) includes the MRI studies.

- 9 -

motion in the examined areas (Exhibit 10F, pages 23-27). This entry also notes normal diagnostic images, and straight leg raising results. Overall, this exam supports the conclusion that the claimant could perform postural and exertional movements in accordance with the assessment as of the date last insured." (Tr. 31).

I find the decision reflects that the ALJ properly considered Plaintiff's condition as a whole and any omission to explicitly discuss the MRI results is harmless.

2. The Opinion of the Vocational Expert

At step four of the sequential evaluation, the ALJ relied on the VE's testimony to find that, through her date last insured, Plaintiff could perform her past relevant work (Tr 31-32, 63-65). In this Circuit, when "the ALJ elects to use a vocational testimony to introduce independent evidence of the existence of work that a claimant could perform, the ALJ must pose a hypothetical question that encompasses all of the claimant's severe impairments in order for the VE's testimony to constitute substantial evidence." Chavanu v. Astrue, No. 3:11-cv-388-J-TEM, 2012 WL 4336205, at *9 (M.D. Fla. Sept. 21, 2012) (citing Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985). Plaintiff argues that the ALJ's hypothetical question to the VE did not include all of her limitations and "since the ALJ's residual functional capacity determination is not supported by substantial evidence, the hypothetical question based on that residual functional capacity determination is flawed." This argument lacks merit.

As the case was resolved at step four, not step five, it is Plaintiff's burden to establish that she could not return to her past relevant work. Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). Although Plaintiff appears to challenge the ALJ's RFC finding, she does not identify what limitations were not adequately reflected and I find

none. An ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." Crawford, 363 F.3d at 1161. No error is shown.

3. Credibility

Plaintiff's last contention is that the ALJ erred in finding that her testimony was "'not entirely credible' when the record clearly reveals that the Plaintiff suffered from documented impairments causing significant limitations." (Doc. 21 at 33). A claimant may seek to establish that she has a disability through her own testimony regarding pain or other subjective symptoms. Dyer, 395 F.3d at 1210. "In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Id. When an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Foote, 67 F.3d at 1562.

Here, the ALJ applied the pain standard and determined "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 30). In support of this general statement, the ALJ made numerous specific findings deemed to be inconsistent with disabling limitations. Among other things,

the ALJ noted that Plaintiff's diabetes was controlled by medication (Tr. 31); Plaintiff "was more physically active than she alleged" (Tr. 28); there were inconsistencies between her allegations and the medical record (Tr. 29-31); Plaintiff's treatment was generally conservative in nature (Tr. 29); and Plaintiff continued to work as a cashier at Disney World since her alleged onset date (Tr. 24-25). All of these findings are supported by the substantial evidence identified by the ALJ. Consequently, Plaintiff's contentions that the ALJ failed to articulate a basis for the credibility finding and that the finding is unsupported are without merit.

## Conclusion

Upon consideration of the foregoing:

1. The Commissioner's final decision in this case is **AFFIRMED.**

2. The Clerk is directed to enter judgment accordingly and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on October 12, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record